BRYANT, Judge.
*620 Where defendant has not demonstrated that his constitutional right to a speedy trial has been violated, we affirm the trial court's ruling.
On 7 May 2012, defendant Jimmy Lee Farmer was indicted in Rowan County Superior Court for first-degree sex offense with a child and indecent liberties with a child. The facts giving rise to the indictment showed that on 8 March 2012, four-year-old Savannah[1] was molested by defendant while visiting her grandmother's home. Savannah's grandmother was married to defendant. One afternoon, while visiting her grandmother's house, Savannah was outside with her family and asked to go inside for a snack. Defendant carried Savannah into the home and eventually into the bedroom where he removed Savannah's clothing and touched her genitals. Savannah's grandmother went inside and did not see them in the kitchen. She went to the bedroom where she saw Savannah lying on the bed. When Savannah got off the bed, she pulled her underwear up, and defendant rushed out of the room without making eye contact. Savannah initially told her grandmother she was jumping on the bed. However, she later told her mother defendant touched her. Savannah's mother called the Rowan County Sheriff's Department to investigate, and defendant was later arrested. Additional relevant facts later brought out at trial revealed that defendant had sexually molested Savannah's cousin when she was between the ages of five and nine years old.
Defendant waived arraignment on 24 May 2012 and 5 November 2012. On 15 July 2013, defendant filed a motion requesting a bond hearing to reduce his bond; however, defendant's motion was not calendared. Defendant's trial was scheduled for 30 January 2017 until defendant's defense counsel and Paxton Butler, the Assistant District Attorney (ADA) for Rowan County (hereinafter ADA), agreed to continue the case and calendar it for the 17 July 2017 trial session. Nearly five years after the indictment and a few weeks after his case was first scheduled for trial, defendant filed a motion for a speedy trial on 6 March 2017 and requested that the trial court either dismiss the case or establish a peremptory date for trial. On 11 July 2017, defendant filed a motion to dismiss alleging a violation of the right to a speedy trial found in the *621 North Carolina Constitution and the United States Constitution. Per the motion, defendant had "the same counsel throughout the life of the case."
The matter came before the Honorable Lori I. Hamilton, Judge presiding, who heard the motion on 17 July 2017 just prior to trial. Defendant called Amelia Linn, Rowan County Assistant Clerk of Court, to testify regarding the motion to dismiss based on a speedy trial violation. Linn testified that her office was the keeper of records and she was the supervisor of the criminal division records. Linn also testified that at least 65 trial sessions had occurred during the time between defendant's indictment and his trial. Additionally, the court records showed defendant's case was calendared for the 9 May 2012 session and then rescheduled for the 30 January 2017 session. Between those two sessions, there was no trial activity in defendant's case and no subpoenas were issued.[2]
*559 These records were admitted into evidence without objection by the ADA.
After reviewing the evidence and representations made by both parties, the trial court applied the factors in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (hereinafter the Barker factors) and determined that defendant's right to a speedy trial was not violated. Subsequently, defendant's motion to dismiss was denied and the State proceeded to trial. Defendant did not call any witnesses.
On 20 July 2017, defendant was found guilty of both charges. Judge Hamilton entered consecutive sentences of 338 months to 476 months with credit given for time served while awaiting trial. Defendant immediately gave notice of appeal.
On appeal, defendant argues the trial court erred by denying his motion to dismiss because the State violated his constitutional right to a speedy trial. Specifically, defendant argues that the State's failure to calendar his trial date in a timely manner was unreasonable as he waited approximately five years before his jury trial. While this was a *622 significantly long time to await trial, we disagree that the five-year delay constituted a speedy trial violation based on the facts of this case.
"The denial of a motion to dismiss on speedy trial grounds presents a question of constitutional law subject to de novo review." State v. Johnson , --- N.C. App. ----, ----, 795 S.E.2d 126, 131 (2016). "We therefore consider the matter anew and substitute our judgment for that of the trial court." Id.
The right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not per se prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial.
State v. McKoy , 294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978) (citing Barker , 407 U.S. at 514, 92 S.Ct. at 2184, 33 L.Ed.2d at 101 ).
"In determining whether a defendant has been deprived of his right to a speedy trial, [pursuant to] N.C. Const. art I, § 18 ; U.S Const. amend VI, our courts consider four interrelated factors together with such other circumstances as may be relevant." State v. Chaplin , 122 N.C. App. 659, 662, 471 S.E.2d 653, 655 (1996) (quotations omitted). These Barker factors include: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay." Id . (quoting State v. Groves , 324 N.C. 360, 365, 378 S.E.2d 763, 767 (1989) ). "None of these [ Barker ] factors are determinative; they must all be weighed and considered together[.]" State v. Wilkerson , --- N.C. App. ----, ----, 810 S.E.2d 389, 392 (2018).
Length of Delay
In the instant case, defendant was arrested and remained incarcerated for nearly 63 months-approximately five years, two months and twenty-four days-before his case was tried. While "the length of the delay is not per se determinative of whether defendant has been deprived of his right to a speedy trial[,]" the "post[-]accusation delay [is] presumptively prejudicial at least as it approaches one year." State v. Spivey , 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003) (quotations omitted). Here, the *623 length of the delay is significant enough to trigger an inquiry into the remaining Barker factors.
Reason for the Delay
Second, defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution. Only after the defendant has carried his burden of proof by offering prima facie evidence showing that the delay was caused by the neglect or willfulness of the prosecution[,]
*560 must the State offer evidence fully explaining the reasons for the delay and sufficient to rebut the prima facie evidence.
Id. (citation omitted).
Defendant argues there was administrative neglect by the State to calendar his trial and motions. Specifically, defendant contends that the State allowed his case to be idle while there were 77 administrative sessions and 78 trial sessions between 2012 and 2017. The State acknowledged that there was a considerable delay in calendaring defendant's case. However, the State presented evidence of crowded dockets and earlier pending cases given priority as a valid justification for the delay.
According to the record, it is undisputed that the primary cause for defendant's delayed trial was due to a backlog of pending cases in Rowan County and a shortage of staff of assistant district attorneys to try cases. The State asserts that, at minimum, defendant also played a role in the delay as the record shows defendant was still preparing his trial defense as of late 2014 when he requested funds to obtain expert witnesses. Significantly, defendant filed his motion for a speedy trial after he agreed to continue his case to the next trial session in 2017. Thus, defendant himself acquiesced in the delay by waiting almost five years after indictment to assert a right to speedy trial.
Although case backlogs are not encouraged, we agree with the trial court's conclusion that defendant did not establish a prima facie case that the delay was caused by neglect or willfulness of the prosecution. The record supports that neither party assertively pushed for this case to be calendared before 2017, and after defendant agreed to continue his case, scheduling conflicts prevented defendant's case from being calendared before 20 July 2017.
Assertion of Right
"A criminal defendant who vigorously asserts his right to a speedy trial will be considered in a more favorable light than a defendant who *624 does not." State v. Strickland , 153 N.C. App. 581, 587, 570 S.E.2d 898, 903 (2002). A "[d]efendant is not required to demand that the state prosecute him" as it is the State's duty to assure that a defendant's case is brought to trial in a timely fashion. State v. Pippin , 72 N.C. App. 387, 395, 324 S.E.2d 900, 906 (1985). "But a defendant's failure to assert his speedy trial right, or his failure to assert the right sooner in the process [weighs] against his contention that he has been denied his constitutional right to a speedy trial." Johnson , --- N.C. App. at ----, 795 S.E.2d at 133.
Here, defendant formally asserted his right to a speedy trial on 6 March 2017, almost five years after he was arrested. The trial court acknowledges in its findings that at least two years following defendant's arrest, defendant was still petitioning the court for resources to develop his case. In 2013 and 2014, defendant filed motions for expert funding to aid in his defense, both of which were granted. Although defendant contends he did not have the authority to calendar his case sooner, defendant did not take affirmative steps to bring his case to the court's attention until 2017. Within four months of his assertion of a speedy trial right, defendant's case was calendared and tried. Given the short period between defendant's demand and his trial, defendant's failure to assert his right sooner weighs against him in balancing this Barker factor.
Prejudice
"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker , 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. In considering this factor, "[a] defendant must show actual, substantial prejudice." Spivey , 357 N.C. at 122, 579 S.E.2d at 257.
The constitutional right to a speedy trial addresses three concerns: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these concerns, most important is whether the prosecutor's delay hampered defendant's ability to present his defense.
Johnson , --- N.C. App. at ----, 795 S.E.2d at 133 (citation and quotations omitted).
*561 Here, defendant contends he was prejudiced as the length of the delay could have potentially affected the witnesses' ability to accurately recall details, and therefore, possibly impaired his defense. See Barker , 407 U.S. at 532-33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 ("Loss of memory ... is not always *625 reflected in the record because what has been forgotten can rarely be shown.... [I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."). However, the victim, who was nine at the time she testified, was able to recall details of the incident itself although she demonstrated some trouble remembering details before and after the incident which occurred when she was three years old. Other witnesses, however, testified and outlined the events from that day. Also, as the trial court pointed out, defendant has had access to all the witnesses' interviews and statements to review for his case and/or use for impeachment purposes. Considering that the information was available to defendant, we do not believe defendant's ability to defend his case was impaired.
Although defendant has not provided evidence or sufficiently argued pretrial incarceration detrimentally impacted his life, we recognize the disadvantages defendant could experience by the "restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility" while in confinement. Id. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. However, as we have previously discussed, defendant's lack of assertiveness in bringing his case to the court's attention before 2017 contradicts his argument of anxiety or concern about the status of his case. To some extent we are inclined to believe "he had hoped to take advantage of the delay in which he had acquiesced." Id . at 535, 92 S.Ct. at 2194, 33 L.Ed.2d at 119. Thus, after carefully balancing the delay with potential prejudice, we remain unpersuaded by defendant's argument that he suffered prejudice as a result of the delay.
Conclusion
Having considered the Barker factors and other relevant circumstances, we conclude that defendant has failed to demonstrate that his constitutional right to a speedy trial was violated. Accordingly, we affirm the trial court's denial of defendant's motion to dismiss.[3]
AFFIRMED.
Judge HUNTER, JR., concurs.
Judge ARROWOOD dissents in separate opinion.

A pseudonym is used to protect the identity of the minor child and for ease of reading.

We note there was pre-trial activity in defendant's case. On 29 July 2013, in response to defendant's motion, the court granted an order allowing funds for a private investigator. On 21 January 2014, defendant filed a motion for funds for an expert analyst, which was granted by the trial court on 22 January 2014. The State filed for a protective order on 10 December 2013 precluding copies of the DVD and pictures of the victim from being reproduced. Additionally, on 23 January and 12 July 2017, defendant filed two motions in limine-to exclude evidence of defendant's 1983 murder conviction of his wife and daughter, and to exclude evidence of prior bad acts-which the trial court granted on 18 July 2017.

We urge the trial court-and prosecutors in particular-to carefully attend to the backlog of cases. The deprivation of a speedy trial is not taken lightly; especially those where, like here, pre-trial incarceration extends for over five years. This is a significant delay that potentially infringes on constitutional rights. Unlike the facts and circumstances in this case which did not show a clear constitutional violation, a slight shift in relevant facts could have easily indicated unfair prejudice to a defendant so as to require dismissal.