IN THE SUPREME COURT OF NORTH CAROLINA

No. 8A19

Filed 18 December 2020

STATE OF NORTH CAROLINA

v.

JIMMY LEE FARMER

Appeal pursuant to N.C.G.S. § 7A-30(2) from a divided panel of the Court of Appeals, 262 N.C. App. 619, 822 S.E.2d 556 (2018), affirming a judgment entered on 20 July 2017 by Judge Lori I. Hamilton in Superior Court, Rowan County. Heard in the Supreme Court on 11 December 2019.

> *Joshua H. Stein, Attorney General, by Derrick C. Mertz, Special Deputy Attorney General, for the State-appellee.*
>
> *Jarvis John Edgerton IV for defendant-appellant.*

MORGAN, Justice.

This appeal involves a criminal defendant's contention that the passage of time between the issuance of the indictments for the offenses that he was alleged to have committed and his trial for these alleged offenses was so lengthy that it constituted a violation of defendant's right to a speedy trial as provided by the Constitution of the United States and the North Carolina Constitution. In applying the pertinent constitutional provisions, the salient principles which prescribe a criminal defendant's right to a speedy trial which were established by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514 (1972), and the controlling

considerations which govern an alleged offender's right to a speedy trial which were determined by this Court pursuant to *Barker*, we hold that the scheduling and procedural circumstances existent in the present case, albeit unsettling, do not constitute an infringement upon defendant's constitutional right to a speedy trial.

*Factual Background and Procedural History*

The evidence at defendant's trial tended to show the following facts. On 8 March 2012, four-year-old "Savannah"[1] was allegedly molested by defendant—her step-grandfather—while Savannah was visiting the home shared by her grandmother and defendant. Savannah's grandmother was married to defendant at this time. On the date of the alleged offenses, Savannah was playing outside of her grandmother's home with members of her family when she asked to go inside for a snack. Defendant volunteered to take Savannah inside in order to get an apple. However, when defendant carried Savannah into the home, he did not take her to the kitchen but instead took Savannah into the master bedroom. Savannah was lying on the bed and defendant removed Savannah's clothing and touched her genitals.

After a while, Savannah's grandmother felt that the amount of time that defendant and Savannah had been inside the home was "odd," and upon entering the residence and going to the kitchen, the grandmother did not see either Savannah or

---

[1] The name "Savannah" is a pseudonym which has been utilized throughout appellate review of this case to protect the identity of the minor child and to facilitate the ease of reading.

defendant. Upon hearing his wife enter the home, defendant hastily pulled up Savannah's underwear and shorts, leaving them twisted. Savannah's grandmother noticed that the door to the master bedroom was ajar, and when she investigated, she saw Savannah lying on her back on the bed in the master bedroom and noticed that the child's "pants weren't right." Savannah got off of the bed while continuing to pull up her underwear and asked her grandmother to hold her. Defendant rushed out of the room without making eye contact with his wife. Originally, Savannah explained that her underwear had gotten disarranged because she had been jumping on the bed. Savannah gave her grandmother this explanation because it was the version of the story that defendant had instructed Savannah to say. However, on the ride home with her mother from the grandmother's residence later in the day, Savannah told her mother that defendant had touched Savannah's genital area. Savannah's mother contacted the Rowan County Sheriff's Office. It began an investigation into the matter which led to the arrest of defendant on 24 April 2012. At his first appearance in court on 26 April 2012 following his arrest, defendant received court-appointed counsel. On 7 May 2012, defendant was indicted on charges of first-degree sex offense with a child and indecent liberties with a child.

Defendant waived arraignment on 24 May 2012 and 5 November 2012. On 15 July 2013, defendant filed a motion requesting a bond hearing to reduce his bond, a motion for funds for a private investigator, and notice of his intent to request expert funds. On 29 July 2013, the trial court allowed defendant's motion for funds for a

private investigator; however, defendant's bond hearing was not calendared. On 21 January 2014, defendant filed another notice of his intent to request expert funds and a motion for funds for an expert analyst, and the motion was heard and allowed without objection by the State on the following day of 22 January 2014. Defendant did not meet with any of the experts whom he had retained until 5 March 2014.

Defendant's trial was scheduled to start on 30 January 2017; however, counsel for defendant and the State agreed to continue the case and to reschedule it for the 17 July 2017 trial session of court. On 6 March 2017, defendant filed a motion for a speedy trial and asked the trial court either to dismiss the charges or to schedule the trial for an immovable court date by way of a peremptory setting. Defendant additionally filed a motion to dismiss on 11 July 2017, alleging a violation of the right to a speedy trial as established by the Constitution of the United States. In his motion to dismiss, defendant stated that he had maintained "the same counsel throughout the life of [the] case."

The speedy trial motion came before the Honorable Lori I. Hamilton, who conducted the hearing regarding defendant's motions on 17 July 2017 during the trial session of Superior Court, Rowan County, during which defendant's criminal trial was rescheduled. At the hearing, defendant called Rowan County Assistant Clerk of Court Amelia Linn to testify concerning the allegedly unconstitutional delay in bringing defendant to trial following his indictment. Linn testified that her office was the keeper of legal records in Rowan County and that she was the supervisor of the

criminal records division. Linn also represented that no fewer than sixty-five trial sessions had occurred during the period of time between defendant's 7 May 2012 date of indictment and the 17 July 2017 trial date. Within this time period, defendant's case had no trial activity from a calendared date of 9 May 2012 to the 30 January 2017 trial session of court, according to Rowan County court records which were introduced into evidence at the hearing.

After reviewing the evidence which was introduced and hearing the arguments which were made by both parties, the trial court applied the factors established in *Barker* to assess whether defendant's constitutional right to a speedy trial had been violated. The trial court determined that defendant's right to a speedy trial had not been violated; accordingly, defendant's motion to dismiss was denied and the matter proceeded to trial.

During trial, the evidence regarding the series of events which allegedly occurred on 8 March 2012 involving Savannah and defendant along with the purported actions and circumstances which followed was presented as described above. In addition, defendant's niece testified that defendant had sexually molested her in the late 1970s and early 1980s when the niece was between the ages of five and nine years old. The State offered that the lengthy period of time which elapsed between the alleged incidents involving defendant's activity with the niece and with Savannah was explained, at least in part, by defendant's lengthy imprisonment for two counts of murder in 1983, resulting from defendant's killing of his previous wife

and his eight-year-old daughter. Defendant did not offer any evidence at trial. On 20 July 2017, the jury returned verdicts finding defendant guilty as charged of first-degree sex offense with a child and indecent liberties with a child. Thereupon, the trial court entered consecutive sentences totaling 338 months to 476 months with credit given to defendant for time served while awaiting trial. Defendant gave oral notice of appeal in open court.

*The Court of Appeals Decision*

In the Court of Appeals, defendant argued that the trial court erred by denying defendant's motion to dismiss the charges against him. Defendant contended that the State violated his constitutional right to a speedy trial by failing to calendar his trial date for approximately five years following the issuance of the indictments against him. *See State v. Farmer*, 262 N.C. App. 619, 822 S.E.2d 556 (2018).[2] The majority of the panel of the lower appellate court acknowledged that the five-year delay during which defendant waited to proceed to trial on the charges against him was "significantly long." *Id.* at 621–22, 822 S.E.2d at 559; *see State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003) (noting that a delay between indictment and trial of one year is presumptively prejudicial). However, after reviewing all of the *Barker* factors, the Court of Appeals majority ultimately held that there was no

---

[2] Defendant did not specifically challenge any of the trial court's findings of fact in the Court of Appeals or in his appellant's new brief, so the findings of fact are binding on appeal before this Court. Similarly, the dissenting opinion of the Court of Appeals in this case did not take issue with any of the lower court's findings.

speedy trial violation based on the specific facts of this case and therefore affirmed the trial court's denial of defendant's motion to dismiss. *Farmer,* 262 N.C. App. at 625, 822 S.E.2d at 561.

The Court of Appeals majority cited in its authored opinion our decision in *State v. McKoy*, 294 N.C. 134, 240 S.E.2d 383 (1978), for the proposition that

> [t]he right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not per se prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial.

*Farmer*, 262 N.C. App. at 622, 822 S.E.2d at 559 (quoting *McKoy*, 294 N.C. at 140, 240 S.E.2d at 388). Under *Barker*, the factors to be considered in making the difficult and highly fact-specific evaluation of whether a possible speedy trial violation has occurred include "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay." *State v. Groves*, 324 N.C. 360, 365, 378 S.E.2d 763, 767 (1989) (citation omitted).

After observing that the length of the delay was constitutionally problematic, the Court of Appeals majority next addressed the reason for the lapse of "nearly 63 months—approximately five years, two months and twenty-four days—before

-7-

[defendant's] case was tried," noting that a "defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." *Farmer*, 262 N.C. App. at 622, 822 S.E.2d at 559 (quoting *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255). The lower appellate court perceived that defendant himself was responsible for some part of this delay, in that "defendant was still preparing his trial defense as of late 2014 when he requested funds to obtain expert witnesses." *Farmer*, 262 N.C. App. at 623, 822 S.E.2d at 560. The majority of the Court of Appeals panel further recognized that it was "undisputed that the primary cause for defendant's delayed trial was due to a backlog of pending cases in Rowan County and a shortage of staff of assistant district attorneys to try cases." *Id.* The majority of the panel decided that "defendant did not establish a prima facie case that the delay was caused by neglect or willfulness of the prosecution." *Id.*

As for the third *Barker* factor, the Court of Appeals majority emphasized that defendant only asserted his right to a speedy trial in a formal fashion with the filing of his motion on 6 March 2017, almost five years after he was arrested. *Farmer*, 262 N.C. App. at 624, 822 S.E.2d at 560. The lower appellate court calculated that within four months of defendant's assertion of his right to a speedy trial, his case was calendared and tried. *Id.* In this regard, the panel's majority expressly concluded that "[g]iven the short period between defendant's demand and his trial, defendant's failure to assert his right sooner weighs against him in balancing this *Barker* factor." *Id.*

Lastly, to establish a violation of the right to a speedy trial "[a] defendant must show actual, substantial prejudice." *Spivey*, 357 N.C. at 122, 579 S.E.2d at 257. Here, the prevailing judges of the panel rejected defendant's contention that he was prejudiced by the delay between his indictment and his trial because the witnesses' memories could have deteriorated over time, to defendant's detriment. *Farmer*, 262 N.C. App. at 624–25, 822 S.E.2d at 561. The majority in the Court of Appeals noted that Savannah, who was four years old at the time of the alleged offenses, was able to testify about facts relevant to the incident itself, even though she had trouble remembering some details about what had occurred before and after the incident. *Id.* at 625, 822 S.E.2d at 561. Other witnesses, including Savannah's grandmother were able, however, to testify fully and clearly regarding the events of the day at issue. *Id.* In addition, defendant had access, for the preparation of his case and for impeachment purposes, to all of the witnesses' interviews and statements obtained during the initial investigation of the matter. *Id.* The lower appellate court also expressed that it was "inclined to believe" that defendant "had hoped to take advantage of the delay in which he had acquiesced." *Id.* (citing *Barker*, 407 U.S. at 535). For all of these reasons, the Court of Appeals majority held that defendant's ability to defend his case was not prejudiced and that defendant "failed to demonstrate that his constitutional right to a speedy trial was violated." *Farmer*, 262 N.C. App. at 625, 822 S.E.2d at 561. Therefore, the Court of Appeals affirmed the trial court's denial of defendant's motion to dismiss.

The dissenting judge of the Court of Appeals panel agreed with the majority that the delay of over five years to provide defendant with a trial after defendant's arrest was "presumptively prejudicial" and went on to determine that in "[a]nalyzing the factors to be applied, none of which support the State's position . . . defendant demonstrated that his constitutional right to a speedy trial was violated." *Farmer*, 262 N.C. App. at 626, 822 S.E.2d at 561 (Arrowood, J., dissenting). With regard to the reason for the delay, the dissenting judge disagreed with the majority that defendant's request for expert funding in 2013 and 2014, defendant's acquiescence to the State's request to continue the case from the January 2017 calendar to the next trial session, and defendant's slowness to formally assert his right to a speedy trial were sufficient to show that defendant consented to the delay in bringing the case to trial. *Id.* at 627, 822 S.E.2d at 562–63. The dissenting judge further opined that any portion of the responsibility for the delay in bringing defendant's case to trial which could be attributed to "congested dockets" and insufficient staffing of the District Attorney's Office in that prosecutorial district "ultimately weighs against the State" because "the State has the responsibility to adequately fund the criminal justice system . . . to timely dispose of cases." *Id.* at 628–29, 822 S.E.2d at 563–64. The dissent viewed the factor of defendant's assertion of the right to a speedy trial as a consideration which "carries only minimal weight in defendant's favor" because "defendant asserted his right to a speedy trial four years and eleven months after he was arrested, and the case was called for trial less than four months later." *Id.* at 630,

822 S.E.2d at 564. As to the final factor of prejudice, the dissenting judge decided that it "weighs only slightly in defendant's favor" since, "absent a more concrete showing of actual prejudice," although "the majority determined defendant was not prejudiced because defendant's ability to defend his case was not impaired," nonetheless "defendant established the presumptive prejudice that naturally accompanies an extended pretrial incarceration." *Id.* at 630–31, 822 S.E.2d at 564.

On 7 January 2019, defendant filed his notice of appeal based upon the dissent in the Court of Appeals. Defendant did not specifically challenge any of the trial court's findings of fact, either in the Court of Appeals or in his brief to our Court; accordingly, those findings of fact are binding. Further, in matters heard by this Court on the basis of a dissenting opinion in the Court of Appeals, the only arguments considered are those where the dissent "diverges from the opinion of the majority" and not those where the "panel agreed." *State v. Hooper*, 318 N.C. 680, 682, 351 S.E.2d 286, 287 (1987).

## *Analysis*

In considering defendant's argument that his constitutional right to a speedy trial was violated here, we must undertake the challenging task—just as the panel members of the lower appellate court did—of evaluating and weighing the following *Barker* factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant

resulting from the delay." *Groves*, 324 N.C. at 365, 378 S.E.2d at 767. We must bear

in mind the caution of the Supreme Court of the United States that

> none of the four factors identified above [are] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533; *see also Spivey*, 357 N.C. at 119, 579 S.E.2d at 255. For this

reason, "it is impossible to determine precisely when the right [to a speedy trial] has

been denied." *McKoy*, 294 N.C. at 140, 240 S.E.2d at 388 (citing *Barker*, 407 U.S. at

514). "We follow the same analysis when reviewing such claims under Article I,

Section 18 of the North Carolina Constitution." *State v. Grooms*, 353 N.C. 50, 62 540

S.E.2d 713, 721 (2000), *cert. denied*, 534 U.S. 838 (2001).

### 1. Length of the delay

The entire Court of Appeals panel agreed that the passage of time between the

initiation of charges against defendant and the occurrence of his trial was too long.

Before this Court, defendant argued that the extraordinarily long delay here—

specified by both the Court of Appeals majority view and dissenting view as lasting

for five years, two months, and twenty-four days—should weigh heavily against the

State and in favor of defendant's speedy trial claim under *Barker*. *See Doggett v.*

*United States*, 505 U.S. 647, 652 (1992) ("[T]he presumption that pretrial delay has

prejudiced the accused intensifies over time."). We agree that the prolonged time

interval in the present case between the date the indictments against defendant were issued and his resulting trial is striking and clearly raises a presumption that defendant's constitutional right to a speedy trial may have been breached.

This first *Barker* factor itself consequently does not require our further consideration since all of the judges of the Court of Appeals panel agreed on the presumptive prejudice to defendant of his right to a speedy trial in light of the length of the delay here. Both the majority opinion and the dissenting opinion utilize identical language that the length of the delay "triggers an inquiry into the remaining *Barker* factors." *Farmer*, 262 N.C. App. at 267, 822 S.E.2d at 627. This joint assessment comports with the approach adopted by the Supreme Court of the United States in *Barker* regarding the operation of the "length of the delay" factor upon the determination of the factor's existence: "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. In adhering to this guidance, upon the presumption of prejudice to defendant's constitutional right to a speedy trial by virtue of the length of the delay preceding the occurrence of his trial, we proceed to examine the other delineated *Barker* factors.

**2. Reason for the delay**

With regard to the reason for the length of a delay to bring a criminal defendant to trial where the observance of an accused's right to a speedy trial is challenged, the high court in *Barker* instructs the following:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as . . . overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531.

In implementing this *Barker* factor regarding the reason for the delay, we crafted the following evidentiary structure which we conveyed in our opinion in *Spivey*:

> defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution. Only after the defendant has carried his burden of proof by offering *prima facie* evidence showing that the delay was caused by the neglect or willfulness of the prosecution must the State offer evidence fully explaining the reasons for the delay and sufficient to rebut the *prima facie* evidence.

*Spivey*, 357 N.C. at 119, 579 S.E.2d at 255 (citations omitted).

Defendant contends that the State was both neglectful and willful in its delay to afford him a speedy trial. He depicts the failure of the State to calendar defendant's bond hearing upon the filing of his 15 July 2013 motion as indicative of neglect and

the failure of the State to properly proceed with the scheduling of defendant's trial as representative of willfulness. The State responds to defendant's endeavor to satisfy his burden by asserting that the reasons for the delay in bringing defendant to trial, which it offered into evidence at defendant's 17 July 2017 hearing on his motion to dismiss, included crowded criminal case dockets, older pending cases which were prioritized for resolution at the time, and limited prosecutorial resources. The State also claims that defendant's ongoing preparation for trial and his agreement, both express and tacit, to eventual scheduling of his trial contributed to the delay.

In applying the direction given by the Supreme Court of the United States on this *Barker* factor, we find that this circumstance modestly favors defendant. The nation's highest court is clear that, while different reasons for delay in a criminal trial's execution should be weighed in appropriate increments, a reason such as crowded criminal case dockets—expressly cited by the Supreme Court of the United States in *Barker* and offered as a reason for delay by the State in the instant case— while largely neutral and hence weighted less heavily against the State than a more intentional effort to prejudice a defendant with a delay, nonetheless must be borne by the State rather than by the defendant, since the State bears the responsibility for such a lag in time. We likewise consider here the State's discretion to call other pending criminal cases for trial prior to defendant's case and the State's limited resources for the resolution of criminal cases to weigh, mildly but definitively, against the State. Although defendant's passive and concessionary posture may have been a

contributing element to the delay, it is engulfed by the State's more authoritative role in the delay.

While this Court will refrain from characterizing the State's prosecutorial backlog and usage of prosecutorial resources as being demonstrable of neglect or willfulness in its delay of scheduling defendant's trial, we recognize that we have repeatedly held that overcrowded dockets and limited court sessions are valid reasons excusing delay. *See, e.g., Spivey*, 357 N.C. at 119–121, 579 S.E.2d at 255–56; *State v. Hill*, 287 N.C. 207, 212, 214 S.E.2d 67, 71 (1975); *State v. Hollars*, 266 N.C. 45, 53–54, 145 S.E.2d 309, 315 (1965); *State v. Brown*, 282 N.C. 117, 124, 191 S.E.2d 659, 664 (1972) ("Both crowded dockets and lack of judges or lawyers, and other factors, make some delays inevitable."). As a result and in light of our interpretation of *Barker* and our own Court's precedent, the second *Barker* factor as to the reason for delay slightly, but firmly, weighs in the favor of defendant.

### 3. Assertion of the right to a speedy trial

A defendant's belated assertion of his right to a speedy trial "does weigh against his contention that he has been denied his constitutional right to a speedy trial." *State v. Flowers*, 347 N.C. 1, 28, 489 S.E.2d 391, 407 (1997). In describing the third speedy trial factor in *Barker* to be scrutinized with regard to a criminal defendant's contention that his constitutional right was violated, the Supreme Court of the United States once again employed descriptive and straightforward language to illustrate the proper discernment of an accused's claim.

> The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. 514, 531–32.

By this measure, the third *Barker* factor of a defendant's assertion of the right to a speedy trial weighs significantly against the alleged offender in the case before us. We have noted that defendant was arrested on 24 April 2012, that he obtained court-appointed counsel on 26 April 2012, and that he was indicted on 7 May 2012. However, as the Court of Appeals majority pointed out in its decision, it was almost five years after defendant's arrest until his formal request for a speedy trial when his motion was filed on 6 March 2017. The dissenting judge in the lower appellate court, while acknowledging the existence of appellate case law which is contrary to defendant's stance on this *Barker* factor, viewed the factor to operate minimally in favor of defendant.

Through the operation of the high court's standard on this *Barker* factor that defendant's assertion of the right to a speedy trial is entitled to a strong evidentiary weight in determining whether defendant in the case sub judice was deprived of his constitutional right to a speedy trial, we find that this factor militates strongly against defendant. The difficulty of defendant to show that he was denied a speedy trial due to the emphasis of Supreme Court of the United States upon a defendant's

failure to assert the right is heightened by the happenstance that defendant's case came on for trial four months and eleven days after his speedy trial motion was filed.

**4. Prejudice to defendant resulting from the delay**

The Supreme Court of the United States in its opinion in *Barker* outlined a final factor for speedy trial infringement evaluation, stating the following:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532. We embraced this approach in *State v. Webster*, 337 N.C. 674, 681, 447 S.E.2d 349, 352 (1994).

In examining the most serious component of the prejudice factor which was identified by our country's preeminent legal forum in *Barker*—the possibility that the defense will be impaired—this prospect did not manifest itself in the present case. There has been no contention by defendant that the presentation of his trial defense was impaired, nor any representation by defendant regarding such a compromise of his trial defense. Therefore, the most significant of the three prongs of the prejudice factor does not exist in this case. The first identified prong—the prevention of oppressive pretrial incarceration—inherently exists by virtue of the longevity of

defendant's continuous confinement prior to his trial. The remaining feature of the prejudice components—the minimization of defendant's anxiety and concern—would also inherently exist as he awaited the occurrence of his trial which would resolve the charges against him. While we do not disregard nor diminish the deleterious effects of defendant's prolonged pretrial incarceration, as well as anxiety and concern, upon an accused such as defendant who is awaiting trial for an appreciable period of time, we nonetheless are bound to follow the *Barker* formula on prejudice in recognizing that there was no impairment of defendant's defense which was occasioned by the delay of the trial and the standard presence of the remaining two interests did not rise to a level which amounted to any prejudice to defendant's rights.

In assessing the identified interests which compose the prejudice factor established in *Barker*, we agree with the Court of Appeals majority that defendant did not suffer prejudice in this case stemming from the delay of his trial. While the dissenting view of the Court of Appeals deems this fourth *Barker* factor to weigh slightly in favor of defendant without a demonstration of actual prejudice experienced by defendant, we determine that this final *Barker* factor of prejudice to defendant as a result of the trial's delay significantly weighs against defendant.

*Conclusion*

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these

> factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker*, 407 U.S. at 533.

After identifying and discussing the four factors in its decision in *Barker* which are established to facilitate and foster a trial court's determination of a defendant's claim that his or her constitutional right to a speedy trial has been violated, the Supreme Court of the United States next included the paragraph cited immediately above to serve as overarching direction in evaluating the factors. Our Court adopts these permeating principles in the instant case to aid our major and important task of deciding whether defendant's right to a speedy trial was violated under the facts and circumstances existent in this case. As we, in the words of the *Barker* Court, "engage in a difficult and sensitive balancing process," the Court ascertains that (1) the first *Barker* factor—the length of the delay—presumptively favors defendant; (2) the second *Barker* factor—the reason for the delay—slightly favors defendant; (3) the third *Barker* factor—defendant's assertion of the right to a speedy trial— strongly weighs against defendant; and (4) the fourth *Barker* factor—prejudice to defendant resulting from the delay—significantly weighs against defendant. *Id.* As we follow the guidance articulated by the Supreme Court of the United States, since the length of the delay was "presumptively prejudicial" which necessitated the

inquiry into the other *Barker* factors and since "they are related factors and must be considered together with such other circumstances as may be relevant," we determine that the presumption of prejudice in defendant's case due to the length of the delay has been sufficiently rebutted by the collective effect of the other *Barker* factors. *See Barker*, 407 U.S. at 533.

Upon engaging in the "difficult and sensitive balancing process" of weighing the *Barker* factors as they apply to the circumstances of this case, we hold that defendant's constitutional right to a speedy trial was not violated. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.